# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT LONDON

**CIVIL ACTION NO. 11-50-DLB**

**LORENE TIPTON**                                                                                    **PLAINTIFF**


**vs.**                              **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                      **DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

This action was brought pursuant to 42 U.S.C. § 405(g)[1] to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lorene Tipton applied for a period of disability and disability insurance benefits (DIB) on November 12, 2008. (Tr. 114-15). At the time of filing, Plaintiff was 52 years old and alleged a disability onset date of March 15, 2008. (Tr. 114). Plaintiff alleges that she is unable to work due to heart problems, arthritis, vision problems and depression. (Tr. 13). Her application was denied initially and again on reconsideration. (Tr. 67, 73).

---

[1] In her Complaint, Plaintiff states that the instant "action is brought pursuant to . . . 42 U.S.C. § 405(a) . . . to review the Final Decision of the Commissioner." (Doc. # 2). However, it is subsection (g) that provides an individual with a right of action to seek judicial review of a final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g). Subsection (a) grants to the Commissioner the "power and authority to make rules and regulations and to establish procedures." 42 U.S.C. § 405(a).

At Plaintiff's request, an administrative hearing was conducted on January 5, 2010. (Tr. 25-64). On February 9, 2010, Administrative Law Judge (ALJ) Robert C. King ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 11-20). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 9, 2010. (Tr. 1-5).

On February 7, 2011, Plaintiff filed the instant action. (Doc. # 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for review. (Docs. # 12, 13).

## II. DISCUSSION

### A.      Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d

345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B.    The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date on March 15, 2008. (Tr. 13). At Step 2, the ALJ found that Plaintiff had the following severe combinations of impairments:

> single vessel coronary artery disease of the right coronary artery. . . ; obesity; thyroid disease; degenerative cyst involving the navicular on the left . . . ; mild osteoarthritis of both knees; mild osteoarthritis of the low back . . . ; blepharitis, specific punctuate keratitis, dry eye syndrome, nuclear sclerosis, cataract, myopia, presbyopia, and astigmatism, with a corrected visual acuity of 20/20 in the right eye and 20/20-2 in the left eye; and depressive disorder.

(*Id.*). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (Tr. 16).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform  light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  (Tr. 17). Plaintiff is restricted from climbing ladders, ropes or scaffolds and from crawling, but can only occasionally climb ramps and stairs, stoop, crouch and squat.  (*Id.*).  She can frequently perform fingering and handling with her upper extremities and can occasionally reach above shoulder level.  (*Id.*).  The ALJ found that Plaintiff has "mild difficulty in maintaining sustained concentration and persistence in the completion of tasks in a normal amount of time, but can do adequately and within the norms expected in the competitive workplace, except for tasks that require intense concentration and extraordinary persistence."  (*Id.*).   She is capable of understanding, remembering and carrying out instructions consistent with her education level.  (*Id.*).  The ALJ further found that Plaintiff can generally relate adequately to coworkers, supervisors, and the general public, however she "cannot do work that requires her to frequently negotiate and persuade others, or to frequently engage in the resolution of interpersonal conflicts."  (*Id.*).  Based upon these findings, the ALJ found that Plaintiff is able to perform her past relevant work as a deli worker.  (Tr. 19).

Although the ALJ found that Plaintiff is capable of performing her past relevant work in Step 4, he continued to provide alternative findings for Step 5 of the sequential evaluation process.  (Tr. 19).  At Step 5, the ALJ found that Plaintiff was born on June 11, 1955 and was 52 years old, which is defined as an individual "closely approaching advanced age," on the date the application was filed.  (*Id.*).  *See* 20 C.F.R. § 416.963.  The

ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 19). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 20). ALJ King therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged disability onset date of March 15, 2008 through the date of the decision. (*Id.*).

## C.     Analysis

Plaintiff raises several arguments on appeal. First, Plaintiff contends the ALJ failed to give appropriate weight to the opinion of treating physician, Dr. Alexander Brown, M.D., and failed to give adequate reasoning for refusing to accept his opinion. Second, Plaintiff argues that the ALJ did not consider the combined effects of her impairments. Third, Plaintiff alleges the ALJ did not consider the durational requirement of substantial gainful activity. Finally, Plaintiff alleges the ALJ erred in finding her impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court will address each of these challenges in turn.[2]

---

[2] The final argument raised in the "Issues Presented" section of Plaintiff's Motion for Summary Judgment (Doc. # 12-1, at 1-2) asks "[w]hether a reasonable person could conclude and justify that plaintiff is not disabled in light of the substantial limitations assigned by the treating physician, supported by overwhelming evidence of a lifetime of such difficulties and the further evaluation of the consultative physician." (Doc. # 21-1, at 2). However, this question is never answered by Plaintiff, nor supported by any citation or reference to the evidence of record. In fact, this issue is not even addressed beyond this introductory query.

In failing to direct this Court's attention to any support in the record, or even to make an affirmative assertion, Plaintiff's argument lacks the specificity required by this Court on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006). When a plaintiff neglects to offer any particularized argument to support her assertion, this Court will not devise arguments on plaintiff's behalf, nor will the Court engage in an "open-ended" review of the entire record to determine what evidence-if any–may arguably be inconsistent with the decision of the ALJ. *Id.* at 491. Accordingly, such challenge "warrants little discussion, as [Plaintiff] has made little effort to develop this argument . . . or to identify any specific aspects

### 1. The ALJ Did Not Improperly Reject the Opinion of Treating Physician, Dr. Alexander Brown

Plaintiff argues that the ALJ failed to give deference to the opinion of treating physician Dr. Brown. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ concludes that either criterion is not satisfied, he applies the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544. "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Accordingly, an ALJ may elect not to give controlling weight to a treating physician's opinion, as long as he provides "good reasons" for so doing. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the ALJ did not credit the opinion of Plaintiff's rheumatologist, Dr. Brown, though he acknowledged Dr. Brown's status as a treating physician. (Tr. 18; *see*

---

of the Commissioner's determination that lack support in the record." *Id.* at 490-91. Consistent with Sixth Circuit precedent, this Court will not conduct an "open-ended" review of the entire record in search of all *possible* evidence that might arguably cut against the ALJ's conclusions. *Id.*

Tr. 354-55).  Dr. Brown completed a form in which he opined that Plaintiff suffers from moderate pain and is capable of lifting no more than five pounds.  (Tr. 355).  He also found that Plaintiff could occasionally bend or reach above shoulder level, but never squat, crawl or climb.  (*Id.*).  Furthermore, he found that Plaintiff could frequently manipulate both her left and right hands.  (*Id.*).  He noted that Plaintiff required mild restriction from unprotected height, moving machinery and marked changed in temperature and humidity.  (*Id.*).  However, Dr. Brown stated that Plaintiff is not restricted from driving automobile equipment or exposure to dust, fumes and gases.  (*Id.*).  Finally, Dr. Brown opined that Plaintiff required a sit/stand option and would occasionally need to elevate her legs during an eight hour day.  (*Id.*).  The ALJ found these restrictions to be inconsistent with "the objective medical evidence of record . . . and the claimant's relatively extensive activities of daily living."  (Tr. 18).

First, the ALJ noted that Dr. Brown's assessment was inconsistent with his own treatment records of Plaintiff.  (Tr. 18).  The record establishes that Plaintiff began treatment with Dr. Brown and his colleagues at the Arthritis Center of Lexington in September 2008. (Tr. 217-229).  Dr. Brown regularly saw Plaintiff for arthritis.  (Tr. 217-29, 273-83, 354-61).  He prescribed Ultram, to use as needed, and recommended Tylenol and Glucosamine Chondroitin for her osteoarthritis.  (Tr. 274, 357, 359).  The record indicates that Plaintiff was also taking Calcium and an additional Vitamin D supplement.  (Tr. 220, 273).  Dr. Brown's physical examination of Plaintiff consistently reflected only some tenderness in the knees and ankles with pretibial swelling and tibio-femoral crepitus, though it was not noted to be excessive.  (Tr. 18, 219, 273).  The examinations by both Dr.

Brown and his colleague Dr. Ahmed indicated no swelling, tenderness, deformities or effusions and full range of motion in the remaining joints of Plaintiff's lower extremities. (Tr. 219, 273). Upon examination, no evidence was found of inflammatory arthritis. (Tr. 223). The treatment notes and lab tests indicated negative results for rheumatoid factor and anti-CCP antibody. (Tr. 357, 361). Furthermore, Dr. Brown's treatment notes for October 2008 state that Plaintiff "feels considerably better since the last visit," as do notes for January 2009, which also indicate that Plaintiff rated the intensity/severity of her pain only a three out of ten on a severity scale in which ten represents the worst pain. (Tr. 219, 273).

Moreover, Dr. Brown's treatment notes do not assess any restrictions on Plaintiff's daily activities. The absence of physical restrictions from a treating physician constitutes substantial evidence that an impairment is not disabling. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). Dr. Brown's physical RFC assessment fails to point to any particular records in Plaintiff's medical history to support his conclusions. The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

Additionally, the ALJ found that Dr. Brown's assessment contradicts the weight of the medical evidence of record. (Tr. 18). While the objective medical evidence clearly

establishes that Plaintiff has had some recurrent pain and swelling related to her arthritis, it fails to support the extreme physical restrictions assessed by Dr. Brown.  In July 2008, Plaintiff underwent aspiration and received a cortisone injection to her left knee by orthopaedic surgeon, Dr. Jean Page.  (Tr. 187).  Plaintiff reported improvement to her mobility and a decrease in discomfort and swelling, and declined a subsequent injection in her right knee.  (Tr. 185).  The ALJ notes that x-rays taken of Plaintiff's knees show only minimal findings.  (Tr. 18).  The record contains treatment notes from Plaintiff's family physician, Dr. Neeraj Mahboob, M.D., from April 2008 through November 2009.  (Tr. 188-94, 243-68, 389-401).  It was noted that Plaintiff did have some limited range of motion due to bilateral feet and knee pain, but there were no signs of synovitis or any gross deformity.  (Tr. 18, 256).  The examination notes from August and November of 2008 and November 2009 indicate that Plaintiff displayed good range of motion.  (Tr. 250, 253).

Finally, the ALJ noted the consistency of Dr. Brown's opinion with other record evidence, specifically Plaintiff's "relatively extensive activities of daily living."  (Tr. 18). These activities are described in statements made by Plaintiff and corroborated by statements from her daughter.  (*See* Tr. 33-40, 142-46, 148-55).  Plaintiff testified that she is unable to work due to heart problems and arthritis.  (Tr. 40).  Plaintiff stated that her arthritis makes it difficult to stand or walk for long periods of time.  (*Id.*).  She also complains that the side effects of her heart medications require her to take daily naps, ranging from thirty minutes to two hours.  (Tr. 42).  Despite her allegations of disabling pain, the ALJ noted that Plaintiff's admitted daily activities were not limited to the extent one would expect given her complaints of disabling pain.  Plaintiff testified that she drives once a week, does many household chores including laundry and cleaning, cooks meals,

is able to maintain her own personal grooming and spends time with her immediate and extended family. (Tr. 16, 34-39; *see* 149-51). Additionally, she cares for her disabled husband by preparing his clothes for him and keeping track of his medication. (Tr. 16, 39-40). These activities are confirmed by the statement of Plaintiff's daughter. (Tr. 148-55). For all of these reasons, substantial evidence supports the ALJ's determination to give little weight to the opinion of Dr. Brown, and the ALJ gave good reasons for doing so.

### 2. The ALJ Did Not Fail to Consider the Combined Effects of Plaintiff's Impairments

Plaintiff argues the ALJ failed to consider the combined effect of her impairments. However, an examination of the ALJ's decision refutes this argument. The Commissioner must "consider the combined effect of all [the individual's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If [the Commissioner] find[s] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. §§ 404.1523; 416.923. ALJ King considered all of Plaintiff's severe impairments, and Plaintiff's RFC reflects a consideration of their combined effects. (Tr. 17-19). The ALJ individually addressed Plaintiff's heart problems, musculoskeletal complaints, arthritis, vision problems, and depression, referencing the medical records pertinent to each condition discussed. (*Id.*). The ALJ's "individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

Moreover, Plaintiff does not provide the Court with any rationale to support her argument. Rather, Plaintiff relies on conclusory statements, telling the Court that "[i]t is clear from the medical evidence within the records that Plaintiff is severely impaired from his [sic] mental and physical difficulties." (Doc. # 12-1, at 4). Despite this supposed abundance of record evidence, Plaintiff only cites generally to the physical RFC assessment completed by Dr. Brown and the treatment records of Cumberland River Comprehensive Care Center. As explained above, the ALJ properly afforded no weight to the opinion of Dr. Brown as it was inconsistent with his own treatment notes and the other substantial medical evidence of record, as well as Plaintiff's activities of daily living. The office treatment records from Cumberland River Comprehensive Care Center support the findings of the ALJ. Plaintiff fails to point to any specific portion of those treatment records or articulate how that portion would provide any support to her allegation. Furthermore, general citation to only two medical reports in a record that contains several hundred pages of medical records hardly supports an argument that the ALJ did not consider the combined effects of all Plaintiff's impairments.

3. **The ALJ Properly Found That Plaintiff is Capable of Maintaining Employment**

Plaintiff contends that the ALJ erred by failing to consider the durational requirement of substantial gainful activity. Plaintiff cites *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999) for the proposition that substantial gainful activity means more than merely the ability to find a job and physically perform the same, but also requires the ability to hold the job for a significant period of time. *Id.* at 694. While the ALJ did not cite to *Gatliff*, his decision rejects Plaintiff's contention that she cannot maintain a job. Implicit in the RFC

assigned to Plaintiff by the ALJ is a finding that Plaintiff is capable of maintaining employment. Moreover, the VE testified that Plaintiff is capable of performing her past relevant work, and the ALJ found that jobs exist in significant number in the national economy that Plaintiff could also perform. (Tr. 19-20, 55-62).

Plaintiff does not explain why an individual with her RFC would be unable to maintain employment. Plaintiff simply states:

> The Courts have imposed a durational requirement of substantial activity [that] ... requires the ability to hold the job for a significant period of time. ... This was not considered by the ALJ, nor were the numerous exertional and non-exertional restrictions placed upon the Plaintiff due to her physical and mental limitations. This is made clear in the medical reports herein.

(Doc. # 12-1, at 4-5). Despite Plaintiff's contention that the medical reports make clear that the ALJ failed to consider the durational requirement of substantial gainful activity, Plaintiff fails to provide any citation to the record. Consequently, Plaintiff's conclusory argument is simply not supported by the record herein. Additionally, this Court "has considered *Gatliff* on a number of occasions and repeatedly rejected any suggestion of a separate durational requirement." *Bowman v. Astrue*, No. 5:10-CV-75, 2010 WL 4053543, at *6 (E.D. Ky. Oct. 14, 2010) (unpublished decision) (citations omitted).

### 4. Plaintiff Failed to Show That She Meets a Listing

Plaintiff also argues that the ALJ should have found her impairments severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, Plaintiff fails to identify what listing(s) she believes her impairments meet or medically equal. In failing to direct this Court's attention to which listing(s) her impairments allegedly meet or medically equal, Plaintiff's argument lacks the specificity

required on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). When a plaintiff fails to offer any particularized argument to support her assertion, this Court will not "formulate arguments on the Plaintiff's behalf" or engage in an "open-ended review of the entirety of the administrative record to determine ... whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and ... whether the Commissioner sufficiently accounted for this evidence." *Id.* Rather, the Court limits its consideration to the particular points that Plaintiff appears to raise in her motion for summary judgment. *See id.*

Plaintiff asserts only that "the medical evidence is clear and it does indicate evidence of intensity, frequency and duration so as to seriously interfere with Plaintiff's ability to function." (Doc. # 12-1, at 4). Plaintiff then concludes that "[i]t is clear from the record that Plaintiff should have been determined to meet the GRID due to his [sic] very serious problems, both physical and emotional." (*Id.*). Plaintiff cites only one opinion to support this claim, stating that "[e]ven the Social Security examiner, Dr. Baggs, recognized substantial problems with depression." (*Id.*). Therefore, it appears that Plaintiff believes the ALJ erred in finding that Plaintiff's depression did not meet or medically equal the necessary criteria under the Mental Disorder Listing at Section 12.04.

In his decision, the ALJ evaluated Plaintiff's depression under Listing 12.04 (Affective Disorders), and concluded that Plaintiff's condition does not cause any marked limitation in daily living activities, social functioning, or concentration, persistence or pace, and further, that it does not meet the necessary criteria under any other Mental Disorder Listings at Section 12.00. (Tr. 16). The required level of severity for 12.04 disorders is met

13

when both paragraphs "A" and "B" criteria are satisfied, or when both paragraphs "A" and "C" criteria are satisfied. Therefore, if Plaintiff cannot meet either paragraph "B" or "C" criteria, her depression disorder would not qualify under the 12.04 Listing. Paragraph "B" requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04. Paragraph "C" requires a "[m]edically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," in conjunction with one of the following:

> (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.*

The ALJ found that Plaintiff did not meet or medically equal the paragraph "B" criteria because her mental impairment imposes only a mild restriction in her ability to maintain the activities of daily living and mild difficulties in her ability to maintain social functioning and concentration, persistence or pace. Additionally, the ALJ found no evidence of decompensation. (Tr. 17). Finally, he stated that the evidence does not support the presence of paragraph "C" criteria. (*Id.*).

In support of her argument, Plaintiff cites to only one medical report in the record–a 2009 report prepared by consultative examiner Dr. Timothy L. Baggs. (Tr. 292-302).

Despite Plaintiff's assertion, this report does not contradict the ALJ's opinion that Plaintiff's mental impairment is not severe enough to meet or medically equal the criteria under Listing 12.04. In fact, the ALJ finds that his assessment "is consistent with Dr. Baggs' opinion that the claimant does not have any substantial restrictions relating to psychological issues." (Tr. 19). Dr. Baggs found that Plaintiff's mental impairment (1) did not affect her capacity to understand and remember simple instructions; (2) created only mild difficulty in maintaining sustained concentration and persistence in the completion of tasks; (3) did not affect her ability to relate appropriately with others in a workplace environment or social setting; and (4) did not limit her ability to adapt and respond effectively to pressures found in normal work settings beyond that of an average worker. (Tr. 300-01). None of the restrictions assessed by Dr. Baggs satisfy the criteria of paragraphs "B" or "C" under the Listing at 12.04. Furthermore, the ALJ's findings and Dr. Baggs' opinion are both supported by the treatment records from Cumberland River Comprehensive Care Center. (Tr. 19, 362-388).

Consequently, given the lack of objective medical evidence that would support Plaintiff's allegation that her impairments meet or medically equal a listing, the Court finds the ALJ's determination that Plaintiff's impairments do not meet or medically equal a listed impairment is supported by substantial evidence.

5.    **Plaintiff Makes Additional Arguments Which are Never Developed and Not Provided Any Support from the Record**

Plaintiff asserts additional complaints that are not raised in the "Issues Presented" section of her Motion for Summary Judgment and are never fully developed. (Doc. # 12-1, at 1-2). Plaintiff claims that "hypotheticals must be reasonably based upon the substantial

evidence within the record, which the ALJ failed to do in this instant case." (Doc. # 21-1, at 4). However, Plaintiff fails to articulate any specific portion or finding within a hypothetical that she deems improper. Further, she provides no citation to the record evidence in support of this claim.

The testimony of a Vocational Expert (VE) in response to a hypothetical question will provide substantial evidence of a claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do"). It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence. The findings of the ALJ which have been specifically challenged by the Plaintiff have already been shown to enjoy this level of support. Most notably, the Plaintiff fails to direct the Court's attention to any restriction that was improperly included or improperly disregarded by the ALJ in forming the hypotheticals, and makes no reference to the record to support this claim. Therefore, this assertion is insufficient to establish that the ALJ erred in presenting the hypotheticals to the VE.

The Plaintiff additionally states that "the testimony of the Plaintiff is important" and that it is her position that "the testimony of the plaintiff [was] ignored in this matter." (Doc. # 12-1, at 5). This assertion is supported only by the statement that "Plaintiff is aware of her problems and the limitations which they cause her," declaring that "[s]he testified credibly of the problems from which she suffers, and the reports of the doctors substantiate

16

her testimony." (*Id.*). Credibility determinations are generally reserved for the ALJ and should not be discarded lightly. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Social Security Rule 96-7p requires the ALJ to explain his credibility determination so that it is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ affirmatively considered Plaintiff's testimony, but did not find her subjective complaints fully credible, concluding that they are inconsistent with the objective medical evidence and the extent of her daily activities. (Tr. 18). Plaintiff fails to indicate what portions of Plaintiff's testimony were impermissibly disregarded by the ALJ, or how the medical reports serve to substantiate her testimony. Rather, Plaintiff makes only general and conclusory statements. The credibility findings of the ALJ are sufficiently explained in his decision and are supported by substantial evidence. Accordingly, the general and unsupported assertions of Plaintiff on this matter are insufficient to find that the ALJ improperly disregarded Plaintiff's testimony.

## III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act are supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

3.   Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**; and

4.   A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 25th day of October, 2011.



Signed By:

_David L. Bunning_     DB

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\London\6-11-50- Tipton MOO.wpd